**FERROSTAAL INC.**

v.

**M/V YVONNE, et al.**

**No. CIV.A. 96–4116.**

United States District Court,
E.D. Louisiana.

June 22, 1998.

### ORDER AND REASONS

PORTEOUS, District Judge.

This cause came for hearing on a previous date upon the Motions of the defendants, Littlestone Shipping, Inc. and Bossclip Ltd., for Partial Summary Judgment. Oral argument was waived and the matter was taken under submission on the briefs. Having considered the parties' memoranda and the relevant law, the Court hereby **GRANTS** the Motion for Partial Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### I. Background

The plaintiff, Ferrostaal, Inc. ("Ferrostaal") is an importer of steel into the United States, that ordered a shipment of steel coils from a supplier in Brazil. On October 10, 1995, the Brazilian supplier entered into a charter party with defendant, Bossclip Ltd. ("Bossclip"), to deliver the steel from the port of Praia Mole, Brazil to "one safe berth Brownsville, New Orleans and Houston— U.S./Gulf." *See* Plaintiff's Opposition Memorandum, p. 2.

On November 25, 1995, Bossclip issued ten bills of lading to Ferrostaal for the shipment of steel coils to New Orleans aboard the M/V YVONNE. Also on that date, a separate bill of lading was issued for the Houston shipment. Subsequently, the cargo issued under the New Orleans bills of lading was discharged in New Orleans on December 15, 16, and 17, 1995, and the cargo issued under the Houston bill of lading was discharged in Houston on December 19, 20, and 21, 1995. On October 7, 1996, Ferrostaal notified Bossclip of its claim for alleged damage to the steel coils carried under the New Orleans bills of lading. At that time, Ferrostaal also requested a six month extension of time (until June 15, 1997) in which to file suit or seek arbitration; Bossclip subsequently granted this requested extension.

On December 20, 1996, Ferrostaal filed suit against Bossclip and the owner of the vessel, Littlestone Shipping Inc. ("Littlestone"), for alleged damage to the cargo discharged in Houston. Thereafter, on August 7, 1997, Ferrostaal amended its complaint to include a claim for damage to the cargo discharged in New Orleans. The damage to the steel coils allegedly resulted from the Master allowing the hatch covers to remain open in New Orleans during heavy rain, and from the hatch covers leaking during the voyage from Brazil to the United States.

Littlestone and Bossclip filed identical motions for partial summary judgment contending Ferrostaal's claim for damage to the New Orleans cargo is time barred under the provisions of the Carriage of Goods by Sea Act

("COGSA"), 46 U.S.C.App. § 1303(6). Specifically, Littlestone and Bossclip contend that under COGSA, each bill of lading is a separate contract of carriage and that a plaintiff seeking recovery for damage to cargo must set forth the specific bills of lading for which damages are claimed. Ferrostaal made no claim for damage to the cargo carried under the New Orleans bill of lading when it filed suit on December 20, 1996, and it did not amend its complaint to include such a claim until August 7, 1997, almost eight weeks after the extension had expired.

Littlestone argues in the alternative that the *in rem* claim against the M/V YVONNE should be dismissed because this Court lacks jurisdiction, since the vessel has not been arrested in this district by Ferrostaal.

Ferrostaal opposes the motions for partial summary judgment arguing that under Rule 15(c) of the Federal Rules of Civil Procedure, the claims relating to the New Orleans bills of lading contained within the amended complaint relate back to the filing of the original complaint on December 20, 1996. Specifically, Ferrostaal alleges that the rust damage to the steel coils discharged in New Orleans and in Houston arose out of the same "transaction," "conduct," or "occurrence."

As to Littlestone's claim that this court lacks jurisdiction to hear the *in rem* action against the M/V YVONNE, Ferrostaal submits that it is within the Court's discretion to permit the action to remain dormant until such time as *in rem* jurisdiction might be acquired. Ferrostaal represents to this Court that it believes the M/V YVONNE will call at a port within the Court's jurisdiction prior to the trial of this matter.

Both Littlestone and Bossclip filed Reply Memoranda addressing the "relation back" argument advanced by Ferrostaal. First, Bossclip argues that the contractual extension of time to "file suit" did not contemplate Ferrostaal utilizing Rule 15(c) to bring in a time barred claim. Bossclip also contends that under COGSA, the waiver of a COGSA limitation must be strictly construed, and that the terms of the extension clearly and unambiguously gave Ferrostaal until June 15, 1997, to "file suit." Ferrostaal filed suit as to the cargo damage relating to the Hous-

ton bill of lading, but not the New Orleans bills of lading. Bossclip argues that Ferrostaal's claims as to the New Orleans bills of lading are, therefore, time barred.

Lastly, Bossclip and Littlestone each argue that the New Orleans cargo does not arise out of the same transaction or occurrence as the Houston cargo does. The Defendants point out that: first, each bill of lading was a separate contract of carriage, and the charter party between Bossclip and the Brazilian steel supplier was not validly incorporated into the bills of lading; second, there are different delivery dates for the New Orleans cargo and the Houston cargo; third, prior to the filing of the amended complaint, Ferrostaal negotiated separately with Bossclip regarding the New Orleans cargo and Houston cargo as to settlement claims and extensions of time to file suit; fourth, the damages claimed by Ferrostaal to the Houston cargo and New Orleans cargo are not identical; and finally, the principal case relied upon by Ferrostaal is distinguishable.

## II. Legal Analysis

### A. *Law on Summary Judgment*

The Federal Rules of Civil Procedure provide that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655–56 (5th Cir.1996) (*citing Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912–13 (5th Cir.) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986))), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical

doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis supplied); *Tubacex, Inc. v. M/V RISAN*, 45 F.3d 951, 954 (5th Cir.1995). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus., Co.*, 475 U.S. at 588, 106 S.Ct. 1348. Finally, the court notes that substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. *Prescription of COGSA Claims*

"Every bill of lading ... which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade, shall have effect subject to the provisions" of COGSA. 46 U.S.C. § 1300. Furthermore, under COGSA, *each* bill of lading issued is considered a separate contract of carriage. *See* 46 U.S.C. § 1301(b).

■ COGSA clearly requires that "unless suit is brought within one year after the delivery of the goods or the date when the goods should have been delivered," the carrier and the ship "*shall* be discharged from all liability in respect of loss [of] or damage" to said cargo. 46 U.S.C. § 1303(6) (emphasis added). Although a carrier may waive the right to invoke the one-year time limit imposed by COGSA, the terms of the waiver must be strictly construed. *See Bunge Edible Oil Corp. v. M/V TORM RASK*, 756 F.Supp. 261, 267 (E.D.La.1991) (*citing United Fruit Co. v. J.A. Folger & Co.*, 270 F.2d 666, 669 (5th Cir.1959)), *affirmed*, 949 F.2d 786 (5th Cir.), *cert. denied*, 505 U.S. 1207, 112 S.Ct. 2998, 120 L.Ed.2d 875 (1992).

■ The Federal Rules of Civil Procedure provide that "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth ... in the original pleading, the amendment relates back to the date of the original pleading." FED. R. CIV. P. 15(c). Therefore, a plaintiff can amend a timely-filed complaint, but in order to make such an amendment, the plaintiff must show that the loss arose out of the same "conduct, transaction, or occurrence" set forth in the original pleading. However, a cargo plaintiff may not subsequently amend a timely-filed complaint to include damages for cargo which would have been otherwise time barred under COGSA. *Cf. Shipping Corp. of India v. Pan American Seafood, Inc.*, 583 F.Supp. 1555 (S.D.N.Y.1984) (shipper could assert claim only if damage arose out of "the very same transaction" upon which original claim was made).

The plaintiff's original complaint, which was filed on December 20, 1996, made no claim for damage to the cargo carried under the New Orleans bills of lading. As the claim was for damage to the Houston cargo only, it was timely-filed since the one-year time limit for filing suit (which commenced on December 21, 1995, the date delivery was completed in Houston) had not yet expired. While defendants did grant the plaintiff an extension of time until June 15, 1997, before which to file suit, the plaintiff did not amend its complaint to include the cargo shipped to New Orleans until August 7, 1997, almost eight weeks after the extension had expired.

■ Since each bill of lading is deemed to be a separate contract, this Court agrees with the defendants' assertion that a complaint for damages under COGSA must set forth the specific bills of lading under which the allegedly damaged cargo was shipped. The Court notes that if the plaintiff's "relation back" argument was accepted, there would never be a need to obtain an extension of time in which to file suit; a plaintiff could simply file suit for one claim, then bring in other claims via Federal Rule of Civil Procedure 15(c).

The plaintiff relies upon *Farr Man Coffee, Inc. v. MS JALA TAPI*, 1988 A.M.C. 1352 (S.D.N.Y.1988), in arguing that its claim for damage to the cargo carried under the New Orleans bills of lading relates back to its original, timely-filed complaint. However,

this Court believes that that case is distinguishable from the present case for two reasons. First, there was no mention of a contractual extension of time to file suit granted by the carrier in the *Farr Man Coffee* case. Second, and more important, *Farr Man Coffee* involved an amendment by the plaintiff to include a bill of lading discharged at the *same* port on the *same* delivery dates as the original claim.

This Court notes that in arguing that the motion to dismiss should be denied, the plaintiff points to a case in which it was appropriate, in the exercise of judicial discretion, that the *in rem* action against a vessel for cargo loss be dismissed where the vessel had not yet been arrested in the forum district. *See Vanol USA, Inc. v. M/T Coronado,* 663 F.Supp. 79 (S.D.N.Y.1987). Even though the court in that case could have permitted the action to remain dormant until such time as *in rem* jurisdiction might have been acquired, it declined to do so. *Id.* at 82. This Court concurs with that decision.

There is no genuine issue as to any material fact, therefore, the defendants are entitled to judgment as a matter of law. Accordingly,

**IT IS ORDERED** that the defendants' Motions for Partial Summary Judgment (Doc. Nos. 18 and 19) relating to the plaintiff's claim for alleged damage to cargo delivered in New Orleans, be, and the same are hereby **GRANTED** pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that since the M/V YVONNE has not been arrested in this district, the plaintiff's *in rem* claim for alleged damage to cargo delivered in Houston, be, and the same is hereby **DISMISSED WITHOUT PREJUDICE.**