261 F.3d 264 (2nd Cir. 2001)
 IN THE MATTER OF THE COMPLAINT OF: RATIONIS ENTERPRISES, INC. OF PANAMA, AS OWNER, AND MEDITERRANEAN SHIPPING CO., S.A. OF GENEVA, AS BAREBOAT CHARTERER OF THE M/V MSC CARLA FOR EXONERATION FROM OR LIMITATION OF LIABILITY.
HYUNDAI MIPO DOCKYARD CO., LTD., THIRD-PARTY-DEFENDANT-APPELLANT,
v.
AEP/BORDEN INDUSTRIES; ANGELO BROTHERS, CO.; CUMMINS ENGINE COMPANY, INC., THIRD-PARTY-PLAINTIFFS-APPELLEES.
 Docket No. 00-7935
August Term, 2000
 UNITED STATES COURT OF APPEALS, SECOND CIRCUIT
 Argued: February 27, 2001
Decided August 3, 2001
 
 Appeal from an order of the United States District Court for the Southern District of New York (Richard Owen, Judge) enjoining appellant from prosecuting a declaratory judgment action in Korea. Appellant argues, inter alia, that the injunction should be vacated on the merits, the district court should have held a hearing prior to issuing the injunction, and the district court lacked personal jurisdiction over it. Because we are unable to determine whether appellant forfeited its jurisdictional defense and because we further find that the district court did not properly establish the existence of personal jurisdiction over appellant, we vacate the injunction and remand.
 Raymond J. Burke, Jr., Burke & Parsons (Christopher H. Dillon and Chan W. Sung, of counsel), New York, New York, for Third-Party- Defendant-Appellant.
 Edward C. Radzik, Donovan Parry McDermott & Radzik (William E. Ecenbarger, Jr., of counsel), New York, New York, for Third-Party- Plaintiffs-Appellees.
 Before: Winter, Straub, and Pooler, Circuit Judges.
 
 Winter, Circuit Judge
 
 1
 Hyundai Mipo Dockyard Co., Ltd. ("HMD"), a Korean shipyard, appeals from Judge Owen's order enjoining it from proceeding with a declaratory judgment action in Korea. See In re Complaint of Rationis Enters., Inc., No. 97 CV 9052, 2000 WL 1015918 (S.D.N.Y. July 24, 2000). HMD argues that: (i) the district court gave undue weight to improper factors when it decided to issue the antisuit injunction; (ii) the court erred by refusing to conduct a pre-injunction evidentiary hearing; and (iii) the evidence was insufficient to establish personal jurisdiction overHMD.[1] Appellees, three American cargo companies, dispute these contentions and argue further that HMD forfeited the jurisdictional defense both by not timely asserting it and by engaging in pre-trial activity, including discovery.
 
 
 2
 We cannot determine from the record whether HMD forfeited its defense of lack of personal jurisdiction. We further conclude that, if the defense was not forfeited, a pre-injunction evidentiary hearing was required because essential facts related to whether the court had personal jurisdiction over HMD were in dispute. We therefore vacate the injunction and remand for an evidentiary hearing on the forfeiture issue and, if appropriate, the merits of HMD's jurisdictional defense. Because the jurisdictional issues must be resolved first, we do not decide whether the issuance of an antisuit injunction was proper.
 
 BACKGROUND
 
 3
 The facts are set out in detail in the district court's various opinions in this matter, see, e.g., Rationis, 2000 WL 1015918, at *1; Schreiber Foods Int'l, Inc. v. Intercargo Napoli S.R.L., No. 98 CV 5954, 1999 WL 33469 (S.D.N.Y. Jan. 26, 1999), vacated by Mediterranean Shipping Co. S.A. Geneva v. POL-Atl., 229 F.3d 397 (2d Cir. 2000); In re Complaint of Rationis Enters., Inc., No. 97 CV 9052, 1999 WL 6364 (S.D.N.Y. Jan. 7, 1999), as well as in our previously published decision on a related claim, see Mediterranean Shipping Co., 229 F.3d at 397, familiarity with which are assumed. We therefore summarize only the facts relevant to the present appeal.
 
 
 4
 On November 24, 1997, the M/V MSC Carla, a ship carrying more than 1600 shipping containers, broke in half en route from France to the United States. Half of the vessel sank, along with its cargo. HMD had elongated the Carla in 1984 by installing a mid-body insert. When the Carla split, it did so near one of the seams joining the original hull with HMD's insert.
 
 
 5
 On December 9, 1997, the ship's owner filed a petition under the Limitation of Shipowners' Liability Act, 46 App. U.S.C. §§ 181 et seq., in the Southern District of New York. That Act provides a procedure in the exercise of admiralty jurisdiction that allows a single federal court to determine all relevant issues related to liability and limits the shipowner's liability to the salvage value of the vessel plus the value of freight then pending, should exoneration be denied.
 
 
 6
 HMD was brought into this action in January 1998, when the approximately 1000 cargo claimants in the limitation proceeding put the shipyard on notice that they intended to hold it jointly and severally responsible for the casualty. HMD responded by seeking a declaratory judgment of non-liability from the Ulsan District Court of Korea in June 1998. In the Korean action, HMD served only three of the 1000 cargo claimants, namely, the three appellees in this appeal. The three cargo claimants served were apparently selected because they are essentially the first three alphabetically.
 
 
 7
 In September 1998, various cargo claimants began serving third-party complaints on HMD, at HMD's New Jersey office. In November 1999, appellees -- the three cargo claimants sued by HMD in Korea -- moved in the Southern District to enjoin HMD's Korean action against them.
 
 
 8
 The district court granted the injunction. The grounds primarily relied on were that: (i) the "unusual size and complexity" of the case made it preferable that all claims be settled "in one action to the extent possible," Rationis, 2000 WL 1015918, at *2 (internal quotation marks omitted), and (ii) the fact that HMD brought its Korean action against only three of the 1000 cargo claimants might create difficult problems of collateral estoppel unless the court "enjoin[ed] the risk of them occurring," id.
 
 
 9
 The district court also found no merit in HMD's claim that the court lacked personal jurisdiction over it. The court found that
 
 
 10
 HMD with its sales office in Englewood Cliffs, New Jersey, as observed, right across the Hudson River from New York City, and a New York (Manhattan) telephone listing in the White Pages, has been served in this proceeding, filed an answer, and participated in the case, has not moved to dismiss for lack of personal jurisdiction, and has availed itself of the United States at large.
 
 
 11
 Id. at *3. It therefore held that personal jurisdiction had been properly established because HMD had sufficient contacts in the "bulge area." See Fed. R. Civ. P. 4(k) ("Service of a summons... is effective to establish jurisdiction over the person of a defendant... who is a party joined under Rule 14 or Rule 19 and is served at a place within a judicial district of the United States and not more than 100 miles from the place from which the summons issues...."); Salamon v. Motor Vessel Poling Bros. No. 11, Inc., No. 87 CV 3369, 1989 WL 65517, at *1 (E.D.N.Y. June 6, 1989) ("The circuit courts have uniformly concluded that if a party delineated in Rule 4[k] has minimum contacts with the bulge area, the district court in the forum state gains personal jurisdiction over him through service of process pursuant to Rule 4."). The district court also noted that HMD had participated in discovery in the United States. See Rationis, 2000 WL 1015918, at *3 n.4.
 
 
 12
 This appeal followed. HMD contends that the injunction should not have been issued in light of China Trade & Development Corp. v. M.V. Choong Yong, 837 F.2d 33, 36 (2d Cir. 1987). We held there that, in cases like the present one involving requests for an antisuit injunction, courts should give more consideration to "whether the foreign action threatens the jurisdiction of the enjoining forum" and "whether strong public policies of the enjoining forum are threatened by the foreign action" than to other factors, such as procedural convenience, considered by the district court in HMD's case. HMD also argues, inter alia, that the district court should have held a pre-injunction evidentiary hearing.
 
 DISCUSSION
 
 13
 "The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998) (internal quotation marks and brackets omitted); see Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 578 (1999) (holding, as between subject-matter and personal jurisdiction, "there is no unyielding jurisdictional hierarchy"). We therefore turn first to HMD's claim that the district court lacked personal jurisdiction over it. See Fid. Partners, Inc. v. First Trust Co., 142 F.3d 560, 565 (2d Cir. 1998) (recognizing Supreme Court's rejection of approach whereby courts assume jurisdiction to decide merits in favor of party challengingjurisdiction); see also Marra v. Papandreou, 216 F.3d 1119, 1122 (D.C. Cir. 2000) (holding personal jurisdiction is threshold determination that must precede merits).
 
 
 14
 a) Forfeiture of Objections to the Exercise of Personal Jurisdiction
 
 
 15
 The cargo claimants contend that HMD has forfeited its lack of personal jurisdiction defense.[2] See Ruhrgas, 526 U.S. at 583 ("[S]ubject-matter jurisdiction... is non-waivable... while restrictions on a court's jurisdiction over the person are waivable...."). Specifically, appellees argue that HMD missed the deadline imposed by a magistrate judge's scheduling order for filing motions to dismiss. However, the scheduling order is ambiguous. In May 1999, lawyers representing the largest cargo interests submitted a proposed scheduling order to the magistrate judge that required that "[a]ny motions to dismiss... based on jurisdictional or forum issues should be filed by September 1, 1999." The magistrate judge's order adopted the cargo interests' proposed schedule in part, subject to "the modifications indicated below." In re Complaint of Rationis Enters., Inc., No. 97 CV 9052, at 1 (S.D.N.Y. May 12, 1999) (scheduling order). Among those modifications was the following statement: "Dispositive motions, seeking either dismissal, summary judgment or dispositive relief on any other basis, if any, shall be served and filed no later than July 3, 2000." Id. at 367-68. HMD argues that this modification extended the time for filing motions to dismiss on jurisdictional grounds beyond the deadline suggested by the cargo interests. Appellees, however, argue that the magistrate judge's modification concerned only substantive, not jurisdictional, motions. The district court did not address this issue, and we are unable to determine, from either the proposed order or from the order the magistrate judge adopted, which deadline the judge intended to impose for the filing of jurisdictional motions.
 
 
 16
 Appellees also claim that, even if HMD did not miss the filing deadline, it otherwise forfeited its jurisdictional defense under standards set out in our decision in Hamilton v. Atlas Turner, Inc., 197 F.3d 58 (2d Cir. 1999), cert. denied, 530 U.S. 1244 (2000). In Hamilton, we held that a defendant forfeited its lack of personal jurisdiction defense when the defendant's answer asserted the court's lack of personal jurisdiction, but the defendant did not move to dismiss on those grounds until four years later. We found that "[c]onsiderable pretrial activity," including discovery and settlement conferences, had occurredduring the four-year interval, and that the defendant had "several clear opportunities" to make its motion earlier. Id. at 61-62.
 
 
 17
 Appellees argue that HMD has both engaged in full discovery and foregone opportunities to raise the lack of personal jurisdiction. Specifically, appellees note HMD's June 1999 letter to the district court "question[ing] the need" for a pre-motion conference on appellees' motion for the antisuit injunction. Appellees contend that HMD should have used that opportunity to alert the court to its intention to contest personal jurisdiction. HMD, however, points out that it raised its personal jurisdiction defense in its answer, filed in October 1998, and did not have any opportunity to move to dismiss on those grounds until the first motion that involved HMD -- the motion for the antisuit injunction -- was filed one year later. HMD also mentioned its intention to contest jurisdiction in an April 1999 letter to appellees' counsel.[3] As in the case of the scheduling order, we simply cannot determine on the record before us whether HMD forfeited its objections to the exercise of personal jurisdiction over it.
 
 
 18
 On remand, therefore, the district court should determine whether HMD missed the filing deadline and/or whether it forfeited its defense by participating in the litigation.
 
 
 19
 b) The Need for an Evidentiary Hearing
 
 
 20
 HMD also argues that the district court erred by issuing the injunction without first holding an evidentiary hearing on jurisdiction. We agree. Should the district court on remand conclude that HMD did not forfeit its jurisdictional defense, we believe that a hearing will then be required on the merits of that defense before another injunction may be considered.
 
 
 21
 On a motion for an injunction, "[w]here... essential facts are in dispute, there must be a hearing and appropriate findings of fact must be made." Visual Sciences, Inc. v. Integrated Communications Inc., 660 F.2d 56, 58 (2d Cir. 1981) (internal citation omitted); see Fengler v. Numismatic Americana, Inc., 832 F.2d 745, 748 (2d Cir. 1987) (requiring pre-injunction evidentiary hearing where "material facts were clearly in dispute"). "[A] federal court may issue a preliminary injunction pending its determination of a substantial question of federal jurisdiction of the action.... But substantial probability that the court will find a basis for federal jurisdiction... is a crucial element necessary to justify the issuance of an injunction pendente lite." A. H. Bull S.S. Co. v. Nat'l Marine Egn'rs' Beneficial Ass'n, 250 F.2d 332, 337 (2d Cir. 1957); see also SEC v. Lauer, 52 F.3d 667, 671 (7th Cir. 1995) (issuing preliminary injunction, "court need no more be certain that it has jurisdiction than it need be certain that the plaintiff has a winning case on the merits"). In the present case, essential facts relating to the court's personal jurisdiction over HMD remained in dispute.
 
 
 22
 The district court concluded here that it had personal jurisdiction over HMD on the grounds that HMD had a sales office in New Jersey, a Manhattan White Pages listing, and "has availed itself of the United States at large." Rationis, 2000 WL 1015918, at *3. HMD, however, claims that the telephone listing referenced does not belong to it, and appellees do not contradict that assertion. Moreover, HMD disputes that its contacts in NewJersey -- its local sales office -- sufficed to establish the court's jurisdiction. While a local office may constitute a "continuous and systematic" contact sufficient to allow a court to hold that a defendant subjected itself to the general jurisdiction of the forum state, Helicopteros Nacionales de Col., S.A. v. Hall, 466 U.S. 408, 416 (1984), the presence of such an office is not dispositive, see MacInnes v. Fontainebleau Hotel Corp., 257 F.2d 832, 833-35 (2d Cir. 1958) (local office that received reservations for Florida hotel business was not "doing business" in New York); see also Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995) (lack of regular place of business significant for general jurisdiction determination); Jarvis & Sons, Inc. v. Freeport Shipbuilding & Marine Repair, Inc., 966 F.2d 1247, 1250 (8th Cir. 1992) (defendant, who had no office or agent in forum state, had insufficient minimum contacts). The district court made no findings regarding whether HMD had sufficient minimum contacts apart from the fact that HMD had a local office and a White Pages listing. See Metro. Life Ins. Co. v. Robertson-CECO Corp., 84 F.3d 560, 567 (2d Cir. 1996) ("The due process test for personal jurisdiction has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry.").[4]
 
 
 23
 We note further that the court did not merely issue a temporary injunction to maintain the status quo while it decided the jurisdictional question. Rather, it issued a final injunction on the merits restraining HMD from proceeding with its action in Korea. A court may not grant a final, or even an interlocutory, injunction over a party over whom it does not have personal jurisdiction. See Weitzman v. Stein, 897 F.2d 653, 659 (2d Cir. 1990).
 
 
 24
 Appellees contend HMD's contacts sufficed; HMD contends otherwise. There is no evidence in the record concerning the nature of HMD's business in New Jersey, and it now appears that the district court's reliance on the telephone listing was misplaced. Appellate review is not possible under these circumstances, and essential facts clearly remain in dispute. An evidentiary hearing will therefore be required on jurisdiction before the court can reach the merits on remand, should it wish to do so.
 
 
 25
 Because we vacate the injunction for the reasons discussed above, we do not reach HMD's arguments on the merits, namely, that the district court erred by focusing on two factors -- whether "proceedings in the other forum prejudice other equitable considerations" and whether "adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment," Rationis, 2000 WL 1015918, at *2 (internal quotations omitted) -- when it issued the antisuit injunction. We note, however,that although we have not barred consideration of those factors, we have clearly ruled that two other factors -- "whether the foreign action threatens the jurisdiction of the enjoining forum, and [] whether strong public policies of the enjoining forum are threatened by the foreign action" --are entitled to far greater weight in determining whether an antisuit injunction should issue. China Trade, 837 F.2d at 36; see Computer Assocs. Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 372 (2d Cir. 1997) (holding antisuit injunction improper where "not necessary to protect our jurisdiction or the integrity of our judgment"); cf. id. ("Antisuit injunctions should be granted only with care and great restraint. Ordinarily when the courts of two sovereigns have in personam jurisdiction, one court will not try to restrain proceedings before the other.") (internal quotations and citations omitted). The district court did not consider these factors in any detail, and even intimated that HMD's case may not be controlled by China Trade, see Rationis, 2000 WL 1015918, at *3. However, China Trade does appear to govern and, should the court once more reach the merits of the antisuit injunction, it is directed to that case and its progeny for guidance.
 
 
 26
 We therefore vacate the injunction and remand for further proceedings not inconsistent with this opinion.
 
 
 
 NOTES:
 
 
 [1]
 HMD also makes various claims regarding other defects in the granting of the injunction, including its alleged lack of specificity and the failure to provide for a bond. Because we vacate the injunction on other grounds, see infra, we do not reach these claims.
 
 
 [2]
 Appellees argued forfeiture both at oral argument and in their supplemental letter brief on that issue, which was requested by the panel. However, appellees' initial brief stated: "While [appellees] certainly maintain that HMD has waived any jurisdictional defense by its conduct throughout this litigation, the issue of waiver is not before this Court...." In any event, HMD raised the issue in its brief and the district court - in holding that appellees had made the "requisite showing" for jurisdiction - appeared to rely, at least in part, on the fact that HMD participated in the litigation without moving to dismiss on jurisdictional grounds, Rationis, 2000 WL 1015918, at *3.
 We further note that, although the parties discuss this issue in terms of "waiver," we believe that the issue is more properly described as one of "forfeiture." See Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 61 (2d Cir. 1999), cert. denied, 530 U.S. 1244 (2000). ("The term 'waiver' is best reserved for a litigant's intentional relinquishment of a known right. Where a litigant's action or inaction is deemed to incur the consequence of loss of a right, or, as here, a defense, the term 'forfeiture' is more appropriate.").
 
 
 [3]
 HMD also claims that it raised the lack of personal jurisdiction in its "Response to Request for Production of Documents." However, that response is not part of the record on appeal.
 
 
 [4]
 The district court did not specify whether it determined that it had personal jurisdiction over HMD based on specific or general jurisdiction theories. See Metro. Life, 84 F.3d at 567- 68 ("Specific jurisdiction exists when a [s]tate exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum; a court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts.") (internal quotations omitted). HMD argues that the claims relating to its lengthening of the Carla do not relate to any activities in the United States and, therefore, only general jurisdiction theories may be used to establish personal jurisdiction over it. Although appellees do not appear to contend otherwise, we do not decide whether specific jurisdiction theories might be applicable, because the district court did not find facts adequate to support a finding of jurisdiction under either set of theories.